**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT PIKEVILLE**

CIVIL ACTION NO. 05-118-DLB

JOHN T. NICHOLS                                                     PLAINTIFF

vs.                    MEMORANDUM OPINION & ORDER

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                      DEFENDANT

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Disability Insurance Benefit (DIB) and Supplemental Security Income (SSI) applications that are the subject of this appeal were initially filed by Plaintiff on July 31, 2001.[1] (Tr. 216)  Plaintiff alleged a disability onset date of June 26, 2001, due to lower back, hip, neck, leg, and knee pain; shoulder pain; stomach problems/digestive problems;

---

[1]Plaintiff had filed prior applications for DIB and SSI on October 1, 1999. (Tr. 11) Those applications were denied initially and on reconsideration, and a request for a hearing before an administrative law judge (ALJ) was timely filed.  The hearing took place on March 21, 2001, in Prestonsburg, Kentucky.  The ALJ's written decision of June 25, 2001, denied Plaintiff's claim for both DIB and SSI payments. (Tr. 8-20) The Appeals Council denied further review on November 5, 2002. (Tr. 5-6) Review was thereafter sought before this Court, which on August 5, 2003, affirmed the ALJ's decision denying benefits.

In addition to the pending applications, Plaintiff also filed subsequent DIB and SSI applications on March 31, 2003. (Tr. 209) After initial denial, denial on reconsideration, and following administrative hearing, in a written decision dated July 1, 2004, the ALJ found Plaintiff to be disabled for Social Security benefit purposes as of February 27, 2003. (Tr. 209-12)

arthritis; poor vision; mental problems, including bad nerves, depression, anxiety, easily angered, does not like being in crowds or dealing with the public; headaches; and skin problems/cystic acne. (Tr. 217)  On June 13, 2002, Plaintiff's representative submitted a Motion to Amend the Alleged Onset Date to March 28, 1999. (*Id.*)  Plaintiff's claims were denied initially and on reconsideration, and a request for hearing was timely filed.   On February 13, 2003, a hearing was held in Prestonsburg, Kentucky. (Tr. 522-57)  Plaintiff was 54 years of age at the time of the hearing. (Tr. 525) The Plaintiff's claims for DIB and SSI payments were denied by a February 26, 2003, written decision of the ALJ. (Tr. 216-26)  This decision became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 198-99)

On April 7, 2005, Plaintiff filed the instant action.  The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even

if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the amended alleged onset of disability of March 28, 1999. (Tr. 225).  At Steps 2 and 3, the ALJ found that Plaintiff did have severe impairments due to back pain and affective disorders, but that Plaintiff's stomach, skin, and vision problems and headaches were not severe under Social Security standards. (Tr. 218-19)  The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 220)

At Step 4, the ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels. (Tr. 223)  The ALJ also found that non-exertionally the Plaintiff is moderately limited in ability to perform activities within a schedule, maintain

3

regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting. (*Id.*)  Based on these findings, the ALJ concluded that Plaintiff could return to his past relevant work as a security guard. (*Id.*)  This was based on the testimony of the vocational expert ("VE"), who testified that since security guard work requires light level exertion and is unskilled, Plaintiff's RFC did not restrict him from returning to his past relevant work as a security guard. (Tr. 553-54)

Despite this finding at Step 4, the ALJ made an alternative finding by proceeding to Step 5.  She asked the VE about other jobs available in the national market assuming the Plaintiff could not perform his past relevant work.  The VE was asked to make this determination based on hypothetical questions about a person of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 553-55).  The VE testified that the Plaintiff could obtain employment at the heaviest level as a material handler, at the medium level as an institutional custodian, at the light level as a non-construction laborer, and at the sedentary level as a hand finisher.  Since these were positions existing in significant numbers in both the national and regional economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act.

4

## C. Analysis

Plaintiff raises one challenge in his appeal.  He maintains that the ALJ's decision was not supported by substantial evidence because the ALJ acted as her own medical expert.  Specifically, Plaintiff argues that the ALJ erred by relying on the opinions of state medical consultants, since the most recent such opinion was on October 9, 2001, which was three months before an x-ray taken on January 25, 2002, that showed mild dextroscoliosis with mild degenerative disc disease.  This x-ray, argues Plaintiff, could not have been reviewed by the state medical experts in compiling their reports and issuing their opinions.  Plaintiff claims that by not asking for another consultation and review of the new x-ray, the ALJ was acting as her own medical expert in determining its importance.

It is the role of the ALJ, not the medical experts, to determine a plaintiff's RFC and ultimately whether a plaintiff is disabled.  In assessing RFC, the ALJ is to consider all relevant medical and other evidence in the case record. 20 C.F.R. §§ 404.1520, 416.920. *See also Clinker v. Apfel,* 229 F.3d 1151, 2000 WL 1234325, at *1 (6th Cir.)(unpublished table decision)(rejecting argument that ALJ erred by "creating" his own RFC and noting the relevant question is "whether the ALJ's assessment was supported by substantial evidence").

On September 10, 2001, Dr. Steven Nutter performed an internal medicine consultative examination of the Plaintiff.  In his report, Dr. Nutter stated that the Plaintiff ambulated with a slow, painful-appearing gait, which was not unsteady, lurching, or unpredictable. (Tr. 360)  There was tenderness to the paraspinal muscles and the spinous processes in the cervical spine. (Tr. 362)  The cervical spine allowed for 40 degrees of flexion and 35 degrees of extension, 15 degrees of lateral bending bilaterally and 40

degrees of rotation to the right and 45 degrees to the left. (*Id.*)  The Plaintiff's dorsolumbar spine examination showed normal curvature, tenderness to the paraspinal muscles and the spinous processes of the entire lumbar spine. (*Id.*)  The Plaintiff was able to bend forward at the waist to 25 degrees. (*Id.*)  Lateral bending of the spine was reduced to 10 degrees bilaterally. (*Id.*)  Patient complained of pain in the back with range of motion testing of the hips and lumbar spine.[2]

The report of Dr. Nutter was followed by a consult note by Dr. David Swan on October 9, 2001.  In this note, Dr. Swan wrote, Plaintiff "exhibited significant exaggerated pain behavior and repeatedly on direct examination indicated an inability to carry out a requested action but later in the normal course of his exam demonstrated a normal capacity to carry out that requested action." (Tr. 366)  Dr. Swan stated that in light of these discrepancies and the lack of any longitudinal record of a significant impairment there has been "no significant change in the claimant's capacity for work related activities since the time of the ALJ's decision."[3] (*Id.*)

Plaintiff claims that the x-ray of January 25, 2002 was not considered in these consultative assessments and, therefore, the ALJ cannot rely upon them.  The ALJ is not required to consult a medical expert for each determination about the impact of a medical record.  It is precisely the role of the ALJ to make these determinations.  The regulations direct the ALJ to evaluate the medical evidence, resolve conflicts in the record, and

_____

[2]Also on September 10, 2001, Plaintiff underwent an x-ray at Pikeville Radiology conducted by Dr. Larry K. West.  The x-ray of his lumbar spine showed minimal spurring and disc heights that were in the low but normal range at the two lowest discs.  Otherwise, the x-ray was normal, showing no fracture or subluxation. (Tr. 365)

[3]Referring to the June 25, 2001, decision of the prior ALJ that stated Plaintiff was capable of work at all exertional levels.

determine a claimant's RFC.  *See* 20 C.F.R. § 416.927, 404.1527.  The ALJ did not simply ignore the x-ray results from January, 2002.  In her written decision she acknowledges the fact that the x-ray showed mild dextroscoliosis with mild degenerative disc disease.  (Tr. 218)  In fact, the ALJ uses this information, along with the consultative reports of the two doctors, in deciding that the Plaintiff's back problems are severe.

It is not the place of this Court to determine credibility, which is within the sole discretion of the ALJ.  In the present case, the ALJ determined that Plaintiff's credibility was only fair.  (Tr. 222)  The record has more than one example of inconsistencies between information offered by Plaintiff and information reflected in the medical evidence.  For example, Dr. Nutter noted that during his examination of Plaintiff, he was able to sit comfortably at 90 degrees in a chair.  (Tr. 362)  Plaintiff, however, testified that he could sit for only "five or six, seven minutes" at a time.  (Tr. 542)  Dr. Nutter also noted that the Plaintiff's grip had decreased on the odynometer, though during the physical exam there was no real effort put forth to squeeze Dr. Nutter's fingers, and Plaintiff was able to write his name, button, and pick up coins with either hand without difficulty.  (Tr. 361)  On September 10, 2001, Dr. Nutter noted that Plaintiff presented with a slow, painful-appearing gait.  But on October 18, 2001, Plaintiff presented with a normal-appearing gait at Dr. Rigby's[4] consultative evaluation. (Tr. 369)  During the hearing Plaintiff stood "several times" (tr. 222), despite testifying that he could stand for only four or five minutes at a time.  (Tr. 542)  Dr. Swan's consultative report notes that Plaintiff refused to perform some actions

---

[4]Dr. William R. Rigby performed a psychological consultative examination of the Plaintiff on October 18, 2001.

7

when requested to do so, yet would perform the same actions in the course of normal activity.

The ALJ reviewed all of the medical evidence and records before her and determined that the Plaintiff was exaggerating his condition. Even recognizing the x-ray taken on January 25, 2002, the ALJ concluded that the Plaintiff's back pain was severe but not so severe as to keep the Plaintiff from returning to his previous employment or to keep him from getting another form of employment at any of the exertional levels. This was within the ALJ's prerogative to so determine, given that such a conclusion can be supported by the medical evidence in the record.

Plaintiff would have this Court rely on the Seventh Circuit's decision in *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000). This precedent is neither binding on this Court, as Plaintiff concedes, nor is it applicable to the facts of this case. In *Green*, the ALJ made the determination of plaintiff's disability status solely by reviewing his medical records. At no point did the ALJ in *Green* have a physician examine the plaintiff or his clinical records. *Id.* at 782. In the present case, Plaintiff was examined by multiple physicians who returned consultative opinions. Based on the combination of all these opinions and all other substantial evidence, the ALJ made the determination that Plaintiff maintained the RFC to perform his previous employment and employment at all exertional levels, and so was not disabled by Social Security standards.

As there is substantial evidence to support the ALJ's finding that Plaintiff's medically determinable impairments and the limitations therefrom do not "disable" Plaintiff from substantial gainful employment under Social Security law, her decision must be affirmed.

### III. CONCLUSION

8

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 7th day of June, 2006.

Signed By:

*David L. Bunning*   *DB*

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\7-05-118-NicholsMOO.wpd

9